COMMONWEALTH vs. VICTOR J. LUBIEJEWSKI.

No. 98-P-1985.

Bristol. December 16, 1999. - May 23, 2000.

Present: ARMSTRONG, C.J., SMITH, & BROWN, JJ.

*Motor Vehicle,* Operating under the influence. *Search and Seizure,* Automobile, Emergency. *Constitutional Law,* Search and seizure.

A criminal defendant's motion to suppress evidence resulting from the stop of his vehicle should have been allowed, where a police officer did not have reasonable grounds, based either on an anonymous tip or on his own observations, to stop the defendant for operating his vehicle while under the influence of alcohol [213-215]; where the tip did not convey information demonstrating an emergency existed such that the stop of the vehicle was reasonable under the holding of *Commonwealth* v. *Hurd,* 29 Mass. App. Ct. 929, 930 (1990) [215]; and where the community caretaking doctrine was not applicable to justify the stop [216].

COMPLAINT received and sworn to in the New Bedford Division of the District Court Department on August 25, 1995.

A pretrial motion to suppress evidence was heard by *John A. Markey,* J., and the case was heard by him.

*Dana Alan Curhan* for the defendant.

*Elspeth B. Cypher,* Assistant District Attorney, for the Commonwealth.

SMITH, J. On August 25, 1995, a two-count complaint issued against the defendant charging him with operating a motor vehicle while under the influence of liquor (second offense), and operating a motor vehicle negligently so as to endanger.

Prior to trial, the defendant filed a motion to suppress the evidence on the grounds that the police did not have probable cause or reasonable suspicion to stop his motor vehicle. A District Court judge denied the motion after a hearing.

A trial was held before a judge sitting without a jury. The defendant was found guilty of operating a motor vehicle while

under the influence and not guilty of operating to endanger. The defendant's appeal raises one issue, namely, the denial of his suppression motion.

The judge did not make any findings of fact, but the facts are not in dispute. On August 25, 1995, at approximately 1:00 A.M., State Trooper Michael Bates was on routine patrol when Trooper Thibodeau radioed him from the barracks; an unidentified motorist had called from a car phone and reported that a pickup truck with Massachusetts license plate number D34-314 was traveling on the wrong side of Route 195 in the vicinity of Route 140 in New Bedford.

Thibodeau later radioed Bates that the motorist had called again and stated that the truck had slowed down, crossed the grassy median strip, and then proceeded onto the correct side of the highway. The truck thereafter left the highway and proceeded south on Route 240 in Fairhaven.

Thibodeau ran a Registry of Motor Vehicle check on the license plate number and informed Bates that the truck was registered to 22 James Street in Fairhaven. Bates drove to that address. As he turned onto James Street, he observed headlights from a pickup truck traveling in his direction, away from the address he had been given. He noticed that the front license plate number matched the one provided to Thibodeau by the unidentified motorist. Bates turned his cruiser around and stopped the truck after following it for about twenty feet on James Street. Bates made the stop of the truck as a result of the unidentified motorist's report, and not because of any observations he made concerning the operation of the vehicle.

After he had been stopped, the defendant produced his license and registration. Because Bates detected an odor of alcohol, he had the defendant perform some field sobriety tests. As a result of those tests, Bates concluded that the defendant had been operating his vehicle while under the influence of alcohol, and arrested him.

On appeal, the defendant argues that Trooper Bates lacked reasonable grounds to stop his vehicle because Bates did not observe any motor vehicle infraction or erratic operation but, rather, acted solely on the basis of an anonymous telephone call reporting an earlier infraction. Contrast *Commonwealth* v. *Smigliano*, 427 Mass. 490, 491-492 (1998) (investigatory stop justified where officer received report from motorist that the defendant's car was "all over the road" and the officer saw the

defendant's car twice veer to the right and nearly hit parked cars).

An investigatory stop of a motor vehicle may be justified if the Commonwealth proves "that the police had a reasonable suspicion, based on specific, articulable facts and reasonable inferences therefrom, that [the operator] of the . . . motor vehicle had committed, was committing, or was about to commit a crime." *Commonwealth* v. *Alvarado*, 423 Mass. 266, 268 (1996). Accord *Commonwealth* v. *Alvarado*, 427 Mass. 277, 280-281 (1998). "[I]f the police conduct an investigatory stop based on an informant's tip, our evaluation of the tip's indicia of reliability will be focused on the informant's reliability and his or her basis of knowledge. . . . Because the standard is reasonable suspicion rather than probable cause, a less rigorous showing in each of these areas is permissible." *Commonwealth* v. *Lyons*, 409 Mass. 16, 19 (1990).

Here, the basis of the informant's knowledge appeared within the tip itself, in which he or she described the operation of the truck as it was being driven along the highway. Therefore, the report was based on the unidentified motorist's personal knowledge. *Commonwealth* v. *Smigliano*, *supra* at 492.

"The more difficult question is whether the police had an adequate basis for concluding that the informant was reliable. Because the informant was anonymous, there was no basis for relying on previous conduct of the informant." *Commonwealth* v. *Alvarado*, *supra* at 271. The informant's reliability, however, could be established by independent police corroboration. *Commonwealth* v. *Lyons*, *supra*.

Trooper Bates's observations of the vehicle did corroborate some details of the informant's tip such as the type of vehicle, its license plate number, and its appearance in the area. However, the information supplied by the informant did not include any specific details about the defendant that were not otherwise easily obtainable by an uninformed bystander. *Commonwealth* v. *Motta*, 34 Mass. App. Ct. 921, 922 (1993). "The corroboration went only to obvious details, not nonobvious details. . . . Anyone can telephone the police for any reason." *Commonwealth* v. *Lyons*, *supra* at 21 (reasonable suspicion for investigatory stop not provided by anonymous informant's tip of color, make, and registration number of car, its direction, and race and gender of occupants because tip did not show basis of knowledge or informant's reliability). See *Florida* v. *J.L.*, 120

S. Ct. 1375, 1378-1379 (2000) (anonymous tip that young black male standing at a particular bus stop and wearing a plaid shirt was carrying a firearm lacked sufficient indicia of reliability to establish reasonable suspicion to justify *Terry*[1] stop).

The Commonwealth argues that the decision in *Commonwealth* v. *Hurd*, 29 Mass. App. Ct. 929, 930 (1990), renders the stop reasonable. In *Hurd*, the police received information from an anonymous caller that a man who appeared to be drunk was getting into a blue automobile with New Hampshire license plates in front of a package store. There were three small children in the automobile. The police responded to the call and, when they arrived at the location, they saw the automobile approaching the entrance to Route 128, a high speed highway.

In our decision this court relaxed the requirements that the Commonwealth must show the basis of knowledge and reliability of the informant because the information conveyed to the police demonstrated "an emergency situation requiring immediate action for the protection of life and property." *Id.*, quoting from *Commonwealth* v. *Marchione*, 384 Mass. 8, 11 (1981). Therefore, we held that, because the police had reasonable grounds to believe an emergency existed, they acted appropriately in stopping the vehicle to see if, in fact, the driver was intoxicated.

In justifying an action under the emergency doctrine, "the Commonwealth has the burden of showing . . . that 'the authorities had reasonable ground to believe that an [emergency] existed, and . . . [that] the actions . . . were reasonable under the circumstances.' " *Commonwealth* v. *Morrison*, 429 Mass. 511, 515 (1999), quoting from *Commonwealth* v. *Marchione*, *supra* at 10-11.

The stop that occurred here cannot be based on the emergency doctrine because, at the time that Bates observed the defendant's truck, any emergency was over. The anonymous motorist's last report was that the vehicle had moved to the correct side of the road. Further, when Bates came upon the defendant's vehicle, he observed that it was being operated in a normal manner. Therefore, in the absence of any specific information that the operator of the pickup truck was intoxicated or incapacitated in some manner, once the operator returned to the correct side of the road, the emergency had ended.

---

[1]*Terry* v. *Ohio*, 392 U.S. 1 (1968).

On appeal, the Commonwealth also relies on the "community caretaking" function, a theory that it did not raise below, in support of its argument that the stop was reasonable.

"Police encounters with citizens are not limited to criminal investigations on the exercise of regulatory duties. Some encounters may occur simply when a citizen is in need of assistance, as part of an officer's 'community caretaking functions.' " *Commonwealth* v. *Murdough*, 44 Mass. App. Ct. 736, 738 (1998), *S.C.*, 428 Mass. 760 (1999), quoting from *Cady* v. *Dombrowski*, 413 U.S. 433, 441 (1973).

Under the community caretaking doctrine, police officers are allowed, without reasonable suspicion of any criminal activity, for example, to check on motorists parked in rest areas, especially in winter, *Commonwealth* v. *Murdough, supra* at 739; or to open an unlocked door of a parked vehicle where the officer is acting out of concern for the well-being of the person inside, *Commonwealth* v. *Leonard*, 422 Mass. 504, 508-509, cert. denied, 519 U.S. 877 (1996). See appendix to *Commonwealth* v. *Smigliano*, 427 Mass. at 501-503, for a list of decisions where courts have held that police officers may approach and detain citizens for community caretaking purposes and cases where courts have rejected the community caretaking function as basis for a stop.

There is an important limitation to the community caretaking function. In *Cady* v. *Dombrowski, supra*, the Court emphasized that the community caretaking functions must be "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute."

Here, the defendant was arrested not only for operating while under the influence, but also for operating a motor vehicle negligently so as to endanger. The basis for that charge was the unidentified motorist's report that the truck was operating on the wrong side of Route 195. Therefore, because a reasonable inference may be drawn that Trooper Bates was engaged in "the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute," *Cady* v. *Dombrowski, supra*, the community caretaking function cannot be used in these circumstances to justify the stop. See *Commonwealth* v. *Sondrini*, 48 Mass. App. Ct. 704, 706-707 (2000).

The motion to suppress should have been allowed. As the evidence at the bench trial that followed the suppression hearing was the same as the evidence at the hearing, the guilty find-

ing is set aside, the judgment is reversed, and judgment is to enter for the defendant.

*So ordered.*