83 P.3d 714

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**William L. PRENDERGAST, Defendant–Appellant.**

**No. 24793.**

Supreme Court of Hawai'i.

Feb. 2, 2004.

---

Bryant Zane, Deputy Public Defender, on the briefs, for defendant-appellant William L. Prendergast.

Arleen Y. Watanabe, Deputy Prosecuting Attorney, on the briefs, for plaintiff-appellee State of Hawai'i.

MOON, C.J., LEVINSON, NAKAYAMA, and DUFFY, JJ.; with ACOBA, J., concurring separately.

Opinion of the Court by DUFFY, J.

Defendant-appellant William L. Prendergast appeals from the second circuit court's judgment of conviction and sentence for driving under the influence of intoxicating liquor [hereinafter, "DUI"] filed on November 21, 2001. Prendergast argues that the district court erroneously denied his motion to suppress evidence recovered as a result of an anonymous tip that he was driving erratically. Based on the following, we affirm the district court's ruling on the motion to suppress as well as the district court's judgment of conviction and sentence.

## I. BACKGROUND

At approximately 9:05 p.m. on May 7, 2001, Maui Police Department (MPD) Officer Gordon Sagun was at the Kīhei Police Station. The MPD dispatcher called Officer Sagun and informed him that a caller, who identified himself as Daniel Gilbert, reported that a silver Honda Accord with license plate number EGN 656 had crossed over the center line on Honoapi'ilani highway; the caller reported that the Accord had almost caused

several head-on collisions and had almost hit a guardrail. The caller told the dispatcher that the Accord had turned on to North Kīhei Road, and the dispatcher relayed this information to Officer Sagun. The dispatcher also informed Officer Sagun that the caller was on the other line and was calling from a cellular phone.

At approximately 9:13 p.m., Officer Sagun was traveling north on North Kīhei Road when he saw a line of vehicles, including an Accord matching the caller's description, traveling south on North Kīhei Road. Officer Sagun testified that there were three or four cars in front of the Accord and two or three cars behind it, and that the cars "were all pretty much bunched together." After he passed the Accord and the other cars, Officer Sagun turned around. He had already activated his blue lights and siren; the two or three cars behind the Accord pulled over, and Officer Sagun was able to catch up with the Accord.

Officer Sagun did not personally observe the Accord moving erratically. Instead, he pulled over the Accord as soon as he turned around. He testified that "the call came down as a reckless driver; I wanted to stop him already. He almost caused a head-on collision, that's what the caller was saying."

The caller indicated that he was a tourist and was unable to stop because he was going to the airport. The district court found that there was no further information about the caller other than that his name was Daniel Gilbert.

The prosecution subsequently charged the driver, Prendergast, with driving under the influence of intoxicating liquor in violation of Hawai'i Revised Statutes (HRS) § 291–

4(a)(1) (Supp.2000)[1] and with reckless driving of a vehicle in violation of HRS § 291–2 (Supp.2000).[2] Prendergast moved to suppress the evidence obtained from the warrantless search and seizure of his person and property. The district court, the Honorable Barclay E. MacDonald presiding, denied the motion to suppress. Prendergast subsequently entered a plea of no contest to DUI, conditioned upon his right to appeal the denial of his motion to suppress; in exchange, the prosecution dismissed the count of reckless driving. Prendergast filed a notice of appeal with this court on December 20, 2001.

## II. STANDARDS OF REVIEW

### A. Constitutional Law

■ "We answer questions of constitutional law by exercising our own independent judgment based on the facts of the case. Thus, we review questions of constitutional law under the 'right/wrong' standard." *State v. Jenkins*, 93 Hawai'i 87, 100, 997 P.2d 13, 26 (2000) (citations and internal quotation signals omitted).

### B. Motion to Suppress

■ "An appellate court reviews a ruling on a motion to suppress *de novo* to determine whether the ruling was 'right' or 'wrong.'" *State v. Rodgers*, 99 Hawai'i 70, 72, 53 P.3d 209, 211, *recons. denied*, 98 Hawai'i 506, 51 P.3d 373 (2002).

## III. DISCUSSION

### A. A Traffic Stop is a "Seizure" Under the Fourth Amendment to the United States Constitution and Article I, Section 7 of the Hawai'i Constitution.

The United States Supreme Court has held that when a police officer stops an auto-

---

1. In 1999, HRS § 291–4(a)(1) provided:

**Driving under the influence of intoxicating liquor.** (a) A person commits the offense of driving under the influence of intoxicating liquor if:

(1) The person operates or assumes actual physical control of the operation of any vehicle while under the influence of intoxicating liquor, meaning that the person concerned is under the influence of intoxicating liquor in an amount sufficient to impair the person's normal mental faculties or ability to care for oneself and guard against casualty[.]

This statute was repealed on January 1, 2002; HRS Chapter 291E, "Use of Intoxicants While Operating a Vehicle," now covers this subject matter. *See* HRS § 291–4 (Supp.2000 & 2003); HRS Chapter 291E (Supp.2003).

2. HRS § 291–2 provides:

Whoever operates any vehicle or rides any animal recklessly in disregard of the safety of persons or property is guilty of reckless driving of vehicle or reckless riding of an animal, as appropriate, and shall be fined not more than $1,000 or imprisoned not more than thirty days, or both.

mobile and detains its occupants, a "seizure" occurs so as to implicate the fourth and fourteenth amendments to the United States Constitution.[3] *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979); *State v. Bolosan*, 78 Hawai'i 86, 92, 890 P.2d 673, 679 (1995).[4]

■ We presume that a warrantless search or seizure is invalid unless and until the prosecution proves that the search or seizure falls within a well-recognized and narrowly defined exception to the warrant requirement. *State v. Lopez*, 78 Hawai'i 433, 442–43, 896 P.2d 889, 898–99 (1995). If the prosecution fails to meet this burden, the evidence obtained from the illegal search will be suppressed as "fruit of the poisonous tree." *State v. Fukusaku*, 85 Hawai'i 462, 475, 946 P.2d 32, 45 (1997); *see also Wong Sun v. United States*, 371 U.S. 471, 484–85, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

■ One such narrowly defined exception to the warrant requirement is that a police officer may stop an automobile and detain its occupants if that officer has a "reasonable suspicion" that the person stopped was engaged in criminal conduct. *Bolosan*, 78 Hawai'i at 94, 890 P.2d at 681. "To justify an investigative stop, short of an arrest based on probable cause, 'the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" *State v. Barnes*, 58 Haw. 333, 338, 568 P.2d 1207, 1211 (1977) (quoting *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)).

To determine whether the officer indeed had specific and articulable facts to justify the investigative stop, we examine the totality of the circumstances measured by an objective standard. *United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002) ("When discussing how reviewing courts should make reasonable-suspicion determinations, we have said repeatedly that they must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing."); *Barnes*, 58 Haw. at 338, 568 P.2d at 1211 ("The ultimate test in these situations must be whether from these facts, measured by an objective standard, a man of reasonable caution would be warranted in believing that criminal activity was afoot and that the action taken was appropriate.").

B. *An Anonymous Tip is Frequently Insufficient to Justify a Search or Seizure.*

Both this court and the United States Supreme Court have placed constraints on police officers' ability to act on an anonymous tip. We briefly address three opinions that help to define the permissible use of anonymous tips.

1. *Florida v. J.L.*

The recent opinion of the United States Supreme Court in *Florida v. J.L.*, 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000), provides us with guidance on the constitutionality of an investigatory traffic stop based on an anonymous tip. In J.L., the Supreme

---

3. The fourth amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

The protections of the fourth amendment apply to the states through the fourteenth amendment to the United States Constitution. *State v. Lopez*, 78 Hawai'i 433, 441 n. 16, 896 P.2d 889, 897 n. 16 (1995).

4. Article I, section 7 of the Hawai'i Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches, seizures and invasions of privacy shall not be violated; and no warrants shall issue but upon probable cause, and particularly describing the place to be searched and the persons or things to be seized or the communications sought to be intercepted.

"As the ultimate judicial tribunal with final, unreviewable authority to interpret and enforce the Hawai'i Constitution, we are free to give broader privacy protection than that given by the federal constitution." *State v. Detroy*, 102 Hawai'i 13, 22, 72 P.3d 485, 494 (2003) (citations and internal quotation signals omitted).

Court considered the constitutionality of a stop and frisk based on an anonymous tip informing the police that an individual standing at a bus stop was carrying a gun. *Id.* at 268, 120 S.Ct. 1375. The anonymous caller stated that a young black male, wearing a plaid shirt, was standing at a particular bus stop and was carrying a gun. *Id.* Police officers went to the bus stop and saw three black males, one of whom was wearing a plaid shirt. *Id.* The police officers did not see a gun and did not notice anything out of the ordinary. *Id.* Aside from the tip, the officers did not have any reason to suspect that any one of these individuals was engaged in criminal activity. *Id.*

The Supreme Court held that this anonymous tip was insufficient to justify the stop and frisk because the tip did not contain sufficient indicia of reliability. *Id.* The Court first stated its concerns in relying on anonymous tips:

> Unlike a tip from a known informant whose reputation can be assessed and who can be held responsible if her allegations turn out to be fabricated, see *Adams v. Williams,* 407 U.S. 143, 146–147, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), "an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity," *Alabama v. White,* 496 U.S. 325], at 329, 110 S.Ct. 2412; 110 L.Ed.2d 301[ (1990)]. As we have recognized, however, there are situations in which an anonymous tip, suitably corroborated, exhibits "sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop." *Id.,* at 327, 110 S.Ct. 2412.

J.L., 529 U.S. at 270, 120 S.Ct. 1375. The Court noted that the anonymous call in *J.L.* did not provide any predictive information regarding the subject's activities, such that the police officers did not have any basis on which to judge the informant's credibility. *Id.* at 271, 120 S.Ct. 1375. Although the informant did in fact identify a determinate person, the informant did not articulate her or his basis for knowing that J.L. was carrying a concealed weapon. *Id.*[5]

The Court also rejected the argument that, because firearms are extraordinarily dangerous, any tip regarding firearms ought to give rise to an exception to the warrant requirement. *Id.* at 272, 120 S.Ct. 1375. Justice Ginsburg, writing for the Court, noted:

> [A]n automatic firearm exception to our established reliability analysis would rove too far. Such an exception would enable any person seeking to harass another to set in motion an intrusive, embarrassing police search of the targeted person simply by placing an anonymous call falsely reporting the target's unlawful carriage of a gun.

*Id.*

The Court left open the possibility that the police could act upon an anonymous tip, even if it lacked indicia of reliability, in certain circumstances:

> The facts of this case do not require us to speculate about the circumstances under which the danger alleged in an anonymous tip might be so great as to justify a search even without a showing of reliability. We do not say, for example, that a report of a person carrying a bomb need bear the indicia of reliability we demand for a report of a person carrying a firearm before the police can constitutionally conduct a frisk. Nor do we hold that public safety officials in quarters where the reasonable expectation of Fourth Amendment privacy is diminished, such as airports and schools, cannot conduct protective searches on the basis of information insufficient to justify searches elsewhere.

*Id.* at 273–74, 120 S.Ct. 1375 (citations omitted).

Justice Kennedy, in his concurrence, stated that "[i]f an informant places his anonymity at risk, a court can consider this factor in

---

5. *See also State v. Joao,* 55 Haw. 601, 525 P.2d 580 (1974), in which this court held that a tip from a known informant was insufficient to justify a stop and frisk. The informant told the police only that the defendant carried a concealed weapon whenever he was in town; the informant did not identify the defendant's location at the time, nor did the informant indicate when he had seen the weapon. *Id.* at 602, 525 P.2d at 581–82. This court held that "[w]ithout an adequate anchor, as to time and place, the reliability of this information becomes greatly attenuated." *Id.* at 604, 525 P.2d at 583.

weighing the reliability of the tip." *Id.* at 276, 120 S.Ct. 1375 (Kennedy, J., concurring). He also noted that not all "anonymous" tips are truly anonymous: based on the widespread availability of instant caller identification, "squad cars can be sent within seconds to the location of the telephone used by the informant" of an unreliable tip because making a false report to the police is against the law. *Id.; see also* HRS § 710–1015 (1993) (making false reporting to law-enforcement authorities a misdemeanor).

### 2. *Alabama v. White*

In *Alabama v. White*, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990), the United States Supreme Court held that the police could rely on an anonymous tip to justify an investigatory stop of an automobile. In *White*, an anonymous informant reported that the defendant would be leaving a particular apartment building at a certain time and would drive a brown station wagon with a broken taillight to Dobey's Motel. *Id.* at 327, 110 S.Ct. 2412. The informant stated that the defendant would be carrying cocaine in a brown attaché case. *Id.* The police went to the apartment building, where they witnessed the defendant get into a brown station wagon with a broken taillight and drive towards Dobey's Motel. *Id.* Although the police did not witness the defendant carrying a brown attaché case before they stopped the car, they did discover such a case (containing cocaine) after they pulled over the defendant. *Id.*

A divided Court upheld the defendant's conviction. The Court held that the anonymous tip here was reliable because it predicted the defendant's future activities:

> The general public would have had no way of knowing that respondent would shortly leave the building, get in the described car, and drive the most direct route to Dobey's Motel. Because only a small number of people are generally privy to an individual's itinerary, it is reasonable for police to believe that a person with access to such information is likely to also have access to

reliable information about that individual's illegal activities.

*Id.* at 332, 110 S.Ct. 2412.

Justice Stevens, writing for himself and Justices Brennan and Marshall, filed a vigorous dissent. He noted that an individual's neighbors can often predict when and where that individual might be going on any given day; the defendant in *White* may have worked at Dobey's Motel, so an informant's "prediction" of the defendant's future activities might not have been so extraordinary. *Id.* at 333, 110 S.Ct. 2412 (Stevens, J., dissenting). Justice Stevens then noted that this anonymous tip could have come from an acquaintance of the defendant who wished to harass the defendant. *Id.* Alternatively, the tip could have come from another police officer who had a hunch about the defendant's possible illegal activity but did not have enough evidence to secure a search warrant; as Justice Stevens stated, "Fortunately, the vast majority of those in our law enforcement community would not adopt such a practice. But the Fourth Amendment was intended to protect the citizen from the overzealous and unscrupulous officer as well as from those who are conscientious and truthful." *Id.*

### 3. *State v. Phillips*

In *State v. Phillips*, 67 Haw. 535, 696 P.2d 346 (1985), we vacated a conviction that was based upon evidence seized in a warrantless search. In *Phillips*, an anonymous caller reported that an unidentified male was brandishing a stick and threatening people at the Lanikai Boat Ramp. *Id.* at 536, 696 P.2d at 348. The caller provided information regarding the suspect's car; the police rushed to the Lanikai Boat Ramp and saw a car matching the caller's description at the far end of the parking lot. *Id.* As two officers approached the car, they noticed that the motor was running but otherwise noticed nothing out of the ordinary. *Id.* Once they reached the car, one of the officers spotted and seized a sheathed diver's knife from inside the car. *Id.* at 536–37, 696 P.2d at 348. The officers then ordered the suspect out of the car, at which point one of the officers noticed a black and silver object underneath the driver's seat. *Id.* at 537, 696

P.2d at 348–49. The officer did not know that the object was a loaded handgun until after he seized it. *Id.* at 537, 696 P.2d at 349.

We held that the circuit court should have suppressed this evidence. *Id.* at 541, 696 P.2d at 351. We noted that "[w]ithout more, a faceless informer's tip does not give cause for the forcible stop of a person, let alone the search of his car." *Id.* at 540, 696 P.2d at 350. The tip was unreliable in *Phillips,* even though the informant had correctly reported that the defendant was operating a particular car with a particular license plate number, because the informant did not explain how she or he knew that the defendant was committing a crime and because "when the two police officers reached the scene[,] nothing there suggested a crime had been committed and the defendant was the perpetrator." *Id.* We also held that the driver's possession of a diver's knife in the car did not justify a further search, because mere possession of a knife is not unlawful. *Id.*[6]

C. *Other Jurisdictions Are Split on the Question Whether an Anonymous Tip in a Reckless Driving Case Is Sufficient to Justify an Investigative Stop.*

Whether an anonymous tip of reckless driving is sufficient to justify an investigative stop is a question of first impression for this court. Although the United States Supreme Court has not addressed this issue, courts in several other jurisdictions have, with varying results.

1. **Courts holding that an anonymous tip is insufficient to justify an investigatory stop**

Several states have concluded that an anonymous tip of reckless driving, without independent police corroboration, is insufficient to justify an investigative stop. For example, in *McChesney v. State,* 988 P.2d 1071 (Wyo.1999), the Wyoming Supreme Court held (in a 3–2 decision) that an anonymous tip lacked sufficient indicia of reliability because the informant only provided information regarding the suspect driver's current activity—*i.e.,* the reckless driving—rather than providing predictions of future behavior. *Id.* at 1076–77. The court held that because the informant did not indicate that she or he has inside information, thus making the tip more credible, the police officer investigating the report "is required to corroborate the tip in some other fashion, usually by observing either a traffic violation or driving indicative of impairment." *Id.* at 1077. The court also suggested that it would have upheld the conviction if the reckless driving tip had come from a citizen informant, who thereby exposes her- or himself to possible criminal liability for filing a false report, rather than a completely anonymous informant. *Id.* at 1076.

Similarly, in *Washington v. State,* 740 N.E.2d 1241 (Ind.App.2000), *transfer denied,* 753 N.E.2d 7 (Ind.2001), the defendant was arrested after an anonymous caller reported that he was driving erratically. 740 N.E.2d at 1243. The informant provided the police with a description of the vehicle, including its license plate number, and identified the vehicle's location and direction. *Id.* The police officer who arrested the defendant did not observe any erratic driving. *Id.* The court held that the investigative stop was unlawful because "an anonymous telephone tip, absent any independent indicia of reliability or any officer-observed confirmation of the caller's prediction of the defendant's future behavior, is not enough to permit police to detain a citizen and subject him or her to a *Terry* stop and the attendant interruption of liberty required to accomplish it." *Id.* at 1246.

Additionally, in *Commonwealth v. Lubiejewski,* 49 Mass.App.Ct. 212, 729 N.E.2d 288 (2000), the court held that an anonymous tip was insufficient to justify an investigatory stop. The informant reported the license plate number, location, and direction of a pickup truck that was driving on the wrong

---

**6.** This court has also addressed the propriety of anonymous tips in several other cases, including *State v. Temple,* 65 Haw. 261, 650 P.2d 1358 (1982) (anonymous tip was insufficient to justify stop of vehicle); *State v. Kuahuia,* 62 Haw. 464, 616 P.2d 1374 (1980) (anonymous tip was sufficient to justify stop of defendant's vehicle); and *State v. Goudy,* 52 Haw. 497, 479 P.2d 800 (1971) (anonymous tip predicting future activity, with police confirmation of that activity, was sufficient to justify stop of defendant's vehicle).

side of the road. *Id.* at 290. The informant then called back to report that the truck had crossed over to the correct side of the highway. *Id.* A state trooper responded to the call and pulled the suspect over without observing any erratic driving. *Id.* The court held that the tip was unreliable because "the information supplied by the informant did not include any specific details about the defendant which were not otherwise easily obtainable by an uninformed bystander. 'The corroboration went only to obvious details, not nonobvious details.... Anyone can telephone the police for any reason.'" *Id.* at 291 (citations omitted) (alteration in original). The court also rejected the Commonwealth's assertion that the trooper was justified in pulling over the pickup pursuant to the Massachusetts "emergency doctrine"; the court held that no emergency existed because, at the time the trooper pulled over the pickup truck, the truck was on the correct side of the road and was not being driven erratically. *Id.* at 291–92.[7]

### 2. Courts holding that an anonymous tip is sufficient to justify an investigatory stop

An increasing number of courts have distinguished anonymous tips of drunk or reckless driving from the anonymous tip in *J.L.* For example, shortly after the Supreme Court decided *J.L.*, the Vermont Supreme Court held that an anonymous tip of erratic driving was sufficient to justify an investigatory stop. *State v. Boyea,* 171 Vt. 401, 765 A.2d 862 (2000), *cert. denied,* 533 U.S. 917, 121 S.Ct. 2524, 150 L.Ed.2d 696 (2001). In *Boyea,* an anonymous informant reported the location and direction of a blue-purple Volks-

wagen Jetta, with New York license plates, that was operating erratically. *Id.* at 863. A police officer patrolling nearby parked his cruiser to wait for the Jetta, and within five minutes he saw a purple Jetta with New York plates. *Id.* The officer stopped the Jetta as soon as he caught up to it and did not personally observe the Jetta driving erratically. *Id.*

The Vermont Supreme Court held that this was "a close case," but nevertheless affirmed the defendant's conviction. *Id.* at 867 n. 7, 868. The court gave three reasons for distinguishing this case from *J.L.*:

> First, the information here was more reliable. The Court in *J.L.* emphasized that the anonymous informant had provided nothing more than a bare-bones description of an individual standing at a bus stop. Hence, there was none of the "predictive" information about the individual's movements which lent credibility to the anonymous informant in *White,* 496 U.S. at 332, 110 S.Ct. 2412, 110 L.Ed.2d 301. Here, in contrast, the informant described with particularity, and accurately predicted, the location of a fast moving vehicle on a freeway, information which the officer confirmed within minutes of the call.
>
> ....
>
> [Second, i]n contrast to the report of an individual in possession of a gun, an anonymous report of an erratic or drunk driver on the highway presents a qualitatively different level of danger, and concomitantly greater urgency for prompt action. In the case of a concealed gun, the possession itself might be legal, and the police could, in any event, surreptitiously observe the individual for a reasonable period of time

---

7. The Texas Court of Appeals came to a similar conclusion, although under slightly different circumstances. In *Stewart v. State,* 22 S.W.3d 646 (Tex.App.2000), the court held that "[w]e are mindful of the public danger posed by intoxicated drivers. But we are also mindful of our obligation to follow established Fourth Amendment precedent. Under that precedent, the anonymous caller's tip, which was uncorroborated in its assertion of possible illegality, did not objectively support a reasonable suspicion that appellant was driving while intoxicated." 22 S.W.3d at 650 (citations omitted). The facts in *Stewart v. State* were slightly different than those in the instant case, however. In *Stewart,* .

the anonymous informant reported the suspect while the suspect was parked at a convenience store. *Id.* at 648. The informant reported that the suspect driver fell several times and appeared to be intoxicated. *Id.* When the police officer arrived minutes later, the suspect had started to drive away; the police officer stopped the driver shortly thereafter, without having observed any erratic driving by the suspect. *Id.* The court noted that "given the generality of the radioed description [of the suspect driver], it is not clear that the officer could even be sure that the automobile was being driven by the man seen to fall by the informer." *Id.* at 649.

without running the risk of death or injury with every passing moment. An officer in pursuit of a reportedly drunk driver on a freeway does not enjoy such a luxury. Indeed, a drunk driver is not at all unlike a "bomb," and a mobile one at that.

Finally, in contrast to the police search and seizure of the person in *J.L.*, the police "intrusion" here, as in most DUI cases, consisted of a simple motor vehicle stop.... Thus, the liberty interest at stake in this case did not rise to the level which confronted the Court in *J.L.*

*Id.* at 867–68 (footnotes omitted).

In a concurrence, one of the Vermont justices further distinguished this case from *J.L.* by explaining the public nature of Boyea's activity: "[t]he offense alleged here did not involve a concealed crime—a possessory offense. What was described in the police dispatch to the arresting officer was a *crime in progress*, carried out in public, identifiable and observable by anyone in sight of its commission." *Id.* at 875 (Skoglund, J., concurring).

The court also considered the alternatives available to the police after the informant reported the reckless driver. The police officer responding to the call could: (1) pull the vehicle over right away, as happened here; or (2) follow the vehicle to corroborate the erratic driving. *Boyea*, 765 A.2d at 862. The court noted that this latter course of action could lead to one of three possible endings: (a) the police officer could follow the vehicle for several miles without observing any erratic behavior; (b) the police officer could observe the vehicle drift, harmlessly, onto the shoulder, thus providing corroboration of erratic driving; or (c) the vehicle could veer across lanes of traffic, causing an accident. *Id.* The court held that the Constitution does not compel the police officer to wait and risk harm to the public at large and the driver her- or himself. *Id.* at 862–63.

The New Jersey Supreme Court came to the same conclusion in *State v. Golotta*, 178 N.J. 205, 837 A.2d 359 (2003). An anonymous informant called 9–1–1 on a cellular phone to report the location, direction, and license plate number of a blue pick-up truck that was driving erratically. *Id.* at 361. A police officer nearby saw a blue pick-up truck drive by; the officer pulled the truck over quickly and did not observe any erratic movement by the pick-up truck. *Id.*

The New Jersey Supreme Court cited three factors similar to those cited by the Vermont Supreme Court in distinguishing this case from *J.L.*: first, that the anonymous tip here was more reliable than the tip in *J.L.* because, "by its nature, a call placed and processed via the 9–1–1 system carries enhanced reliability not found in other contexts";[8] second, that an investigative stop is less intrusive than a search of the vehicle's contents or an arrest of the driver; and third, that the driver poses an imminent risk of serious harm. *Id.* at 366–69.

The New Jersey court held that the anonymous tip was sufficient to justify an investigative stop, but the court narrowly tailored this rule to prevent an erosion of fourth amendment protections. The court required that the informant's tip "must convey an unmistakable sense that the caller has witnessed an ongoing offense that implicates a risk of imminent death or serious injury to a particular person such as a vehicle's driver or to the public at large." *Id.* at 369. The court also required the informant's tip to be made close in time to the informant's first-hand observations of the erratic driving. *Id.*

Several other jurisdictions have reached the same conclusion as the Vermont and New Jersey Supreme Courts. The Supreme Courts of Iowa,[9]

---

8. The court explained that "it is possible to retain one's anonymity by placing a 9–1–1 call from a telephone booth or by using certain wireless technology" but that "[o]n balance, [the court was] satisfied that in an expanding number of cases the 9–1–1 system provides the police with enough information so that users of that system are not truly anonymous even when they fail to identify themselves by name." *Golotta*,

837 A.2d at 367. However, New Jersey also has a statute making it a crime to place a call to 9–1–1 without a need for emergency assistance. *Id.*, citing N.J.S.A. 2C:33–3e.

9. *State v. Walshire*, 634 N.W.2d 625 (Iowa 2001). The Iowa Supreme Court held that an anonymous cellular telephone call, reporting that a vehicle was driving in the median and reporting

Kansas,[10] and Wisconsin,[11] as well as the Eighth Circuit Court of Appeals[12] and the New Mexico Court of Appeals,[13] have all held in post-*J.L.* decisions that an anonymous tip of erratic driving is sufficient to justify an investigatory stop. We agree.

D. *An Anonymous Tip is Sufficient to Justify a Limited Investigatory Stop if Firmly Rooted in Time and Place.*

■ We hold that the police may act on an anonymous tip of reckless driving, but only under very narrow circumstances. In the instant case, based on the totality of the circumstances, we hold that the anonymous tip was sufficiently reliable to justify an investigatory stop. Specifically, we point to the reliability of the tip and the imminence of harm in distinguishing the instant case from *J.L.* and *Phillips*. We therefore affirm the district court's denial of the motion to suppress and the subsequent judgment of conviction and sentence.

We distinguish our holding in *Phillips* based on the imminence of the harm in the instant case. The informant in this case reported that Prendergast had nearly caused several head-on collisions; a drunk driver poses a significantly higher risk to the public

and to her- or himself than an individual with a stick seated in a parked car at the far end of a parking lot. However, imminence of harm is but one factor when examining the totality of the circumstances.

The United States Supreme Court placed great emphasis on the unreliability of the tip in *J.L.*; consequently, the reliability of the tip is a predominant factor in our examination of the totality of the circumstances regarding the constitutionality of Officer Sagun's investigative stop. We believe that the reliability of the tip in the instant case is the dispositive factor in distinguishing this case from *J.L.*

The basis for an informant's knowledge in a reckless driving case is clear, whereas the basis for the informant's knowledge in *J.L.* was not. An intoxicated driver's reckless conduct is an open and obvious danger observable by anyone nearby; we need not guess at the basis of an informant's knowledge, because this knowledge clearly derives from personal observations. As Vermont's Justice Skoglund stated in her concurrence in *Boyea*, this case is distinguishable from *J.L.* because the informant here reported "a crime in progress, carried out in public, iden-

the vehicle's make, model, location, direction, and license plate number, was sufficient to justify an investigatory stop. *Id.* at 625, 630. However, the court held that the informant was actually a citizen informant, "defined as one who is a witness to or a victim of a crime." *Id.* at 629.

**10.** *State v. Crawford*, 275 Kan. 492, 67 P.3d 115 (2003). The Kansas Supreme Court held that an anonymous call, reporting that a vehicle was being driven erratically and reporting the vehicle's make, model, color, location, direction, and license plate state of origin, was sufficient to justify an investigatory stop. *Id.* at 116–17.

**11.** *State v. Rutzinski*, 241 Wis.2d 729, 623 N.W.2d 516 (2001). The Wisconsin Supreme Court held that the report of erratic driving by an anonymous informant was sufficient to justify an investigative stop. However, the informant in *Rutzinski*, unlike the informant in the instant case, remained on the line with the 9–1–1 operator for an extended period of time; when the police officer appeared behind the suspect car, the informant told the 9–1–1 operator that she or he (the informant) saw the police officer; that the informant was driving in the car in front of the suspect car; and that the police officer was directly behind the correct vehicle. *Id.* at 519.

The court therefore held that, because the informant put her or his anonymity at risk (because the police officer could have traced the informant's license plates), the tip was not truly anonymous. *Id.* at 525–26.

**12.** *United States v. Wheat*, 278 F.3d 722 (8th Cir.2001), *cert. denied*, 537 U.S. 850, 123 S.Ct. 194, 154 L.Ed.2d 81 (2002). The Eighth Circuit held that an anonymous call, reporting that a vehicle was being driven erratically and providing the vehicle's make, color, location, direction, and partial license plate number, was sufficient to justify an investigative stop. *Id.* at 724. The court stated that "[w]e think that an anonymous tip conveying a contemporaneous observation of criminal activity whose innocent details are corroborated is at least as credible as the one in *White*, where future criminal activity was predicted, but only innocent details were corroborated." *Id.* at 735.

**13.** *State v. Contreras*, 134 N.M. 503, 79 P.3d 1111 (N.M.App.2003). The New Mexico Court of Appeals held that an anonymous call, reporting that a gray van towing a red Geo was operating erratically and providing the vehicle's location and direction, was sufficient to justify an investigatory stop. *Id.* at 1112, 1117–18.

tifiable and observable by anyone in sight of its commission." *Boyea,* 765 A.2d at 875 (emphasis omitted from original).

In the instant case, the anonymous informant who reported Prendergast's reckless driving gave a contemporaneous account of Prendergast's criminal activity. The informant provided the 9–1–1 operator with the make, model, color, license plate number, location, and direction of Prendergast's vehicle. The informant provided information that was firmly rooted in time and place and based on firsthand observations of criminal activity. Consequently, when examining the totality of circumstances in this case, we hold that Officer Sagun had a reasonable suspicion, based on specific and articulable facts, that Prendergast was engaged in criminal activity.[14]

However, we reiterate our concerns regarding pretextual stops and our limitation on evidence admissible as a result of such stops, articulated in *State v. Bolosan,* 78 Hawai'i 86, 94, 890 P.2d 673, 681 (1995):

> We are equally concerned about post-hoc justifications for otherwise invalid investigatory stops, especially those involving automobile stops. Therefore, we hold that an investigative stop can be justified based on an objectively reasonable suspicion of any offense, provided that the offense for which reasonable suspicion exists is related to the offense articulated by the officer involved. Offenses are related when the conduct that gave rise to the suspicion that was not objectively reasonable with respect to the articulated offense could, in the eyes of a similarly situated reasonable officer, also have given rise to an objectively reasonable suspicion with respect to the justifiable offense.

(Citations and footnote omitted.) *See also United States v. Wheat,* 278 F.3d 722, 726 (8th Cir.2001) ("If the investigatory stop is not justified by reasonable suspicion or if the investigating officers exceed the stop's proper scope, any evidence derived from the stop

is inadmissible at trial." (Citing *Wong Sun v. United States,* 371 U.S. 471, 484, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).))

## IV. CONCLUSION

Based upon the foregoing, we affirm the district court's denial of Prendergast's motion to suppress as well as the district court's judgment of conviction and sentence.

### Concurring Opinion by ACOBA, J.

I concur in the result, but do not agree with the adoption of a totality of circumstances test, which in my opinion would be too nebulous for purposes of applying our State Constitution's prohibition against unreasonable seizures. Because of its undifferentiated contours, a totality of circumstances test would be ineffective in confining a reckless driving exception to "very narrow circumstances."

In contrast, the New Jersey Supreme Court has adopted the following "tenets" in evaluating anonymous tips justifying vehicle traffic stops: (1) "The information [from the caller] must convey an unmistakable sense that the caller has witnessed an ongoing offense[,]" (2) the offense "implicates a risk of imminent death or serious injury to a particular person such as a vehicle's driver or to the public at large[,]" (3) "the call [was] close in time to [the caller's] first-hand observations[,]" (4) the "caller must provide a sufficient quantity of information, such as an adequate description of the vehicle, its location and bearing, or similar innocent details, so that the officer, and the court, may be certain that the vehicle stopped is the same as the one identified by the caller[,]" and (5) "the officer conducting the stop" must verify or observe such details. *State v. Golotta,* 178 N.J. 205, 837 A.2d 359, 369 (N.J.2003) (internal quotation marks and citation omitted). I believe the New Jersey Supreme Court test is most faithful to a reasoned safeguarding of the right against unreasonable seizures and

---

**14.** We recognize, just as the Eighth Circuit did, that "even a supposedly contemporaneous account of erratic driving could be a complete work of fiction, created by some malicious prankster to cause trouble for another motorist."

*United States v. Wheat,* 278 F.3d 722, 735 (8th Cir.2001). However, we agree with that court that this risk is minimal when compared with the risk of prohibiting the police from conducting an immediate investigatory stop. *See id.*

would be adopted appropriately under our constitution.