STATE OF HAWAII, Plaintiff-Appellee,
v.
ANH CONG BUI, Defendant-Appellant
No. 28454
Intermediate Court of Appeals of Hawaii.
July 30, 2008.
On the briefs: Dean K. Young (Waters & Young) for Defendant-Appellant.
Brian R. Vincent, Deputy Prosecuting Attorney, City & County of Honolulu for Plaintiff-Appellee.

SUMMARY DISPOSITION ORDER
RECKTENWALD, C.J., WATANABE and FUJISE, JJ.
Defendant-Appellant Anh Cong Bui appeals from the February 16, 2007 Judgment of Conviction and Sentence filed in the Circuit Court of the First Circuit (circuit court).
Bui was charged by complaint with Promoting a Dangerous Drug in the Third Degree in violation of Hawaii Revised Statutes (HRS) § 712-1243 (Supp. 2007) (Count I), and Theft in the Fourth Degree in violation of HRS § 708-833 (1993) (Count II). Prior to trial, Bui moved to suppress evidence including a zip lock bag found during a search of a fanny pack that was recovered from Bui at the time of his arrest. The circuit court denied that motion in the Findings of Fact and Conclusions of Law (FsOF and CsOL) entered on January 6, 2006.[1] A jury convicted Bui of both counts,[2] and the circuit court sentenced Bui to five years of imprisonment for Count I, and thirty days of imprisonment for Count II.[3]
Bui raises the following point of error on appeal: "The [circuit] court erred in failing to suppress the zip lock bag where . . Bui's arrest resulted from his illegal seizure. Bui further asserts that the following FsOF were clearly erroneous:
5. The time was approximately 1:20 in the morning.
. . . .
19. Officer Oakes began searching for a serial number for the bicycle which took some time.
20. Officer Oakes then related the number he located through dispatch in order to determine the name of the registered owner.
21. Dispatch revealed that that [sic] the owner's name was Masafumi Leonard and that the bicycle had not been reported stolen.
22. Officer Oakes asked Dispatch to confer with the owner as to the status of the bicycle.
23. Dispatch was unable to do so.
24. Noting that the registered owner's address was approximately 4 minutes from his location, Officer Oakes sent Officer Joshua Eagle to confer with Mr. Leonard in person as to the status of his bicycle.
25. Officer Oakes was later informed that the bicycle had in fact been stolen about one week prior but Mr. Leonard had decided not to report the theft feeling that nothing would come of his complaint.
. . . .
28. Throughout the detention of the Defendant, Officers on scene did not physically restrain or interrogate the Defendant.
29. Throughout the detention, the Defendant did not make any request to leave.
. . . .
31. Sometime during this detention, a citation was issued to the Defendant for operating an untaxed bicycle on the roadway.
Bui claims that FOF 5 is clearly erroneous because Officer Oakes testified that he arrived at the scene at 1:19 a.m., rather than at "approximately 1:20"; FsOF 19-25 and 31 were clearly erroneous because the circuit court did not make findings as to the time at which the events discussed in those findings occurred; FOF 28 was clearly erroneous because Bui was subjected to interrogation; and FOF 29 is clearly erroneous because it implies that Bui was not subjected to custodial interrogation.
After a careful review of the record and briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised,[4] we resolve Bui's point of error as follows:
(1) With regard to Bui's challenges to the FsOF, Bui's opening brief does not state where in the record the alleged errors were brought to the attention of the circuit court. Hawaii Rules of Appellate Procedure (HRAP) Rule 28(3)(4). "Points not presented in accordance with this section will be disregarded, except that the appellate court, at its option, may notice a plain error not presented." Id.
In any event, FOF 5 is not plainly erroneous since the court's finding (that the time of Officer Oakes's arrival was "approximately 1:20 in the morning") is supported by Officer Oakes's testimony that he arrived at 1:19 a.m. Moreover, any error was harmless since the difference between 1:19 a.m. and "approximately" 1:20 a.m. was not material.
The failure of the circuit court to make findings as to the time of the events described in FsOF 19-25 and 31 was not plain error. If Bui believed it was error for the court not to include the time of the events in its findings, he should have brought that objection to the attention of the circuit court, but he failed to do so.
FOF 28 is ambiguous. The record clearly establishes that Officer Oakes asked Bui questions while Bui was detained. In that sense, Officer Oakes "interrogated" Bui, and FOF 28 would be erroneous. Alternatively, it may have been the court's intention to find that Bui was not subjected to the kind of "sustained and coercive" questioning that turns "permissible general on-the-scene questioning" into "custodial interrogation," see State v. Ah Loo, 94 Hawaii 207, 210, 10 P.3d 728, 731 (2000) (citation omitted), in which case the finding would, in our view, be supported by the record. In any event, even assuming arguendo that the first interpretation is correct, and FOF 28 is erroneous, that error was harmless since it does not change the analysis of whether Bui was lawfully detained.
FOF 29 is supported by the record and is not plainly erroneous.
(2) The circuit court did not err in denying Bui's motion to suppress. "To justify an investigative stop, short of arrest based on probable cause, the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion[.]" State v. Ramos, 93 Hawaii 502, 508, 6 P.3d 374, 380 (App. 2000) (citation omitted). "The ultimate test in these situations must be whether from these facts, measured by an objective standard, a person of reasonable caution would be warranted in believing that criminal activity was afoot and that the action taken was appropriate." Id. (brackets omitted). Furthermore, "[i]n analyzing whether reasonable suspicion supported a stop, [the] court considers the totality of the circumstances. State v. Spillner, 116 Hawaii 351, 357-58, 173 P.3d 498, 504-05 (2007) (citations omitted). "This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might elude an untrained person." Id. at 358, 173 P.3d at 505 (citation and internal quotation marks omitted).
Initially, we conclude that Officer Oakes had reasonable suspicion to approach Bui, engage him in brief conversation, and ask him for identification. Officer Oakes testified at the suppression hearing that "[a] neighbor or a resident in the area had reported a male looking into cars," and gave a description of the male. Officer Oakes indicated in his testimony that he responded to the scene within nine minutes after being dispatched to investigate,[5] and found Bui, who matched the description, alone in the area. Although Officer Oakes did not observe Bui looking into cars, Officer Oakes, who had patrolled that neighborhood for about nine years, and was very familiar with the area, testified that it was "a little bit out of the ordinary" for someone to be "just sort of hanging out" in that residential neighborhood at that early morning hour. In totality, these circumstances were sufficient to justify Officer Oakes's minimally intrusive initial approach and brief questioning of Bui. See State v. Kuahuia, 62 Haw. 464, 465, 616 P.2d 1374, 1375 (1980) (reasonable suspicion existed where "the facts suggested that the source of the [anonymous] tip was a citizen-informer who had observed firsthand the commission of an offense and was reporting his observations almost contemporaneously with the occurrence" and officers' observations upon promptly responding to the scene "substantially confirmed the reliability of the information received"); Ramos, 93 Hawaii at 508, 6 P.3d at 380 (report from police dispatch informing officer that a male with a knife was chasing another male at a specific location was corroborated by officer's observation of a male at the scene who closely matched the description and was "perspiring profusely and `acting funny,'" although the man did not appear to be in possession of a knife or engaged in any illegal activity); see also State v. Prendergast, 103 Hawaii 451, 460-61, 83 P.3d 714, 723-24 (2004) (finding there was reasonable basis to stop an automobile whose driver was suspected of drunk driving given the "imminence of harm," when anonymous caller "provided information that was firmly rooted in time and place and based on firsthand observations of criminal activity"); State V. Melanson, 665 A.2d 338, 340 (N.H. 1995) (finding reasonable suspicion where anonymous call reporting an impaired driver provided details which "reasonably support a conclusion that the caller had personally observed the vehicle," and details such as make, model, location, and direction of the vehicle were corroborated by an officer "almost immediately"); State v. Siergiey, 582 A.2d 119, 120-21 (Vt. 1990) (finding reasonable suspicion where a "citizen complaint" of erratic driving was corroborated by officer's observation of the vehicle with the reported plate number driving slowly).
During the course of his initial encounter with Bui, Officer Oakes noticed that Bui was standing next to a seemingly new bicycle which had been "crudely" repainted with spray paint and did not have the required "tax emblem." Given those circumstances, it was reasonable for Officer Oakes to ask Bui about the ownership of the bike. Bui's answers  that he had borrowed the bike from someone named "Johnny," but didn't know Johnny's last name or where Johnny lived  reasonably gave rise to a suspicion that the bicycle was stolen. It was, in turn, reasonable for Officer Oakes to investigate that suspicion by locating the serial number on the bicycle and asking police dispatch to run a check on that number. Even though that potential avenue of investigation was different from that which caused Officer Oakes to approach Bui in the first instance, it was permissible for Officer Oakes to pursue the serial number check since it became apparent during the course of the legitimate initial investigative encounter that the bicycle might be stolen. See, e.g., United States v. Ruidiaz, 529 F.3d 25, No. 07-1988, 2008 WL 2375090, at *3 (1st Cir. June 12, 2008), ("As the investigation proceeds . . . the officer `may shift his focus and increase the scope of his investigation by degrees if his suspicions mount during the course of the detention.'") (citation omitted).
Bui suggests that the results of that check that the bicycle was not reported stolen, but that it was registered to another individual named Masafumi Leonard  should have dispelled any suspicion and required that the investigative detention end at that point. We disagree. The fact that the name of the registered owner of the bicycle was different from the name, "Johnny," that was given by Bui, together with Officer Oakes's knowledge that it is "fairly common" for thefts of bicycles not to be promptly reported, justified further investigation. Moreover, the investigation which was undertaken  contacting Leonard to verify that the bicycle was stolen, and then having Leonard come to the scene to identify the bicycle as his was reasonable under the circumstances.
In sum, at each stage of the encounter, Officer Oakes had an objectively reasonable basis to detain Bui while conducting the investigation, and the investigative steps that Officer Oakes and his fellow officers took were reasonable, and did not unduly prolong Bui's detention. Cf. Ramos, 93 Hawaii at 508, 510, 6 P.3d at 380, 382. Accordingly, we conclude that the circuit court did not err in denying Bui's suppression motion.
Therefore, the February 16, 2007 Judgment of Conviction and Sentence filed in the Circuit Court of the First Circuit is affirmed.
NOTES
[1] The Honorable Marcia J. Waldorf presided.
[2] The Honorable Fa'auuga L. To`oto`o presided over the jury trial.
[3] The Honorable Michael D. Wilson presided over sentencing.
[4] In the answering brief, Plaintiff-Appellee State of Hawaii argues that this court lacks jurisdiction because the notice of appeal was not timely filed. However, because the 30th day after the entry of the February 16, 2007 judgment fell on a Sunday, and the notice of appeal was filed on the next working day, the notice of appeal was timely filed. HRAP Rules 4(b)(1) and 26(a).
[5] At the suppression hearing, Officer Oakes testified on direct examination as follows:

Q. . And this  this dispatch was sent out about 1:10. a.m.; is that fair to say?
A. Um, yeah, around there or so, a quarter after 1:00.
On cross examination, Officer Oakes testified that he arrived at the scene and observed Bui at 1:19 a.m.