

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NOS. PD-1238-10, PD-1239-10

### JOHN DAVID MARTINEZ, Appellant

### v.

### THE STATE OF TEXAS

### ON APPELLANT'S PETITIONS FOR DISCRETIONARY REVIEW
### FROM THE FOURTH COURT OF APPEALS
### VAL VERDE COUNTY

**KELLER, P.J., filed a dissenting opinion.**

This case presents two issues: (1) whether the caller was anonymous, and (2) whether there were enough articulable facts (in light of either an anonymous or a non-anonymous caller) to justify a traffic stop. I would hold that, even assuming the caller was anonymous, the officer had enough articulable facts to justify a traffic stop.

Officer Hurley said the caller was anonymous. Nevertheless, the officer asked dispatch to contact the caller, and the caller showed up at the location of the stop to identify appellant's vehicle. Under today's technology, it is possible that dispatch could have contacted the caller regardless of whether the caller identified himself. The State did not put the dispatcher, or anyone else, on the

witness stand to detail just how the police were able to direct the caller to the scene. Given Officer Hurley's own statement that the caller was anonymous, I will operate under the assumption that such is the case.[1]

But Officer Hurley had several articulable facts on which to base a traffic stop. He received the dispatch at 10:55 p.m. It was a dark but clear night, and traffic was light at that late hour. A caller had described a man picking up two bicycles and placing them in the bed of a blue Ford pickup truck in a particular area of town. Seven minutes after receiving the dispatch and driving towards the area, he spotted a dark green Ford pickup truck that, at night, looked like it was blue. The pickup truck was one-half to three-fourths of a mile from the area in which the bicycles were taken. The pickup truck had an open bed, though no bicycles were visible.[2]

So, the pickup truck looked blue, it was a Ford, it was moving, it was close to the location of the incident, it was being driven by a man, the bed of the truck was open, and traffic was light at

---

[1] *But see Florida v. J.L.*, 529 U.S. 266, 275 (2000) (Kennedy, J., concurring) (faulting the police officer for acting on an anonymous tip and pointing out that "[t]he record does not show whether some notation or other documentation of the call was made either by a voice recording or tracing the call to a telephone number," and expounding: "Instant caller identification is widely available to police, and, if anonymous tips are proving unreliable and distracting to police, squad cars can be sent within seconds to the location of the telephone used by the informant. Voice recording of telephone tips might, in appropriate cases, be used by police to locate the caller. It is unlawful to make false reports to the police . . . and the ability of the police to trace the identity of anonymous telephone informants may be a factor which lends reliability to what, years earlier, might have been considered unreliable anonymous tips").

[2] After the truck was stopped, a vehicle would drive by occasionally. A few of those vehicles were pickup trucks. Some were light colored and could not have been perceived as blue. Perhaps two pickup trucks were dark colored, but it is impossible to tell from the video the make of those trucks, or whether the dark color of those trucks could have been perceived as blue, or instead, whether they could have been a different color not easily confused with blue, such as brown or red.

the late hour of night. These were enough facts to give Officer Hurley reasonable suspicion to stop the truck to see if there were any bicycles in its bed.

With respect to traffic stops for DWI or reckless driving, several jurisdictions have held that an anonymous phone call that accurately describes the vehicle, without more, may justify a brief stop to prevent a possible accident and investigate a possible DWI.[3] Although these cases are premised in part on the danger that the reckless driving poses to the public, and the need to stop the driver immediately rather than wait for the driver's recklessness or impairment to become apparent, a

---

[3] *See State v. Hanning*, 296 S.W.3d 44, 52-53 (Tenn. 2009); *People v. Wells*, 38 Cal. 4th 1078, 1080-81, 136 P.3d 810, 811 (2006) ("We granted this case to consider under what circumstances, if any, police officers may stop a vehicle and detain its driver based solely on an uncorroborated phoned-in tip that accurately describes the vehicle and its location and relates that a possibly intoxicated person is behind the wheel, 'weaving all over the roadway.' As we explain, although the law appears somewhat unsettled, the better rule, firmly supported by many cases as well as by considerations of public safety and common sense, is that a limited traffic stop is permitted under such circumstances to confirm the officer's reasonable suspicion of intoxicated driving before a serious traffic accident can occur." Vehicle was described as "a 1980's model blue van traveling northbound on Highway 99 at Airport Drive."); *Bloomingdale v. State*, 842 A.2d 1212, 1222 (Del. 2004) (referring to the "less invasive nature of a traffic stop as compared with a public body frisk" that occurred in *J.L.*); *State v. Prendergast,* 103 Haw. 451, 458-61, 83 P.3d 714, 721-24 (2004); *State v. Crawford*, 275 Kan. 492, 67 P.3d 115 (2003) (upholding stop based upon anonymous tip "stating a vehicle's make, model, style, color, the state of origin of its license plate, highway location, and direction of travel all of which was corroborated by the law enforcement officer before the stop and also stating the conclusory allegation that the vehicle was being driven recklessly, which the officer did not attempt to corroborate before the stop"); *United States v. Wheat*, 278 F.3d 722 (8th Cir. 2001); *State v. Walshire*, 634 N.W.2d 625 (Iowa 2001) ("Unlike the tip alleged in *White*—that White was carrying narcotics—or in [*Adams v. Williams*, 407 U.S. 143, 92 S. Ct. 1921, 32 L. Ed. 2d 612 (1972)]—that the defendant was carrying narcotics and a gun—here a total stranger could have observed defendant's driving abilities. No intimate or confidential relationship was required to support the accuracy of the observation. The caller simply reported a contemporaneous observation of criminal activity taking place in his line of sight.") (quoting concurring opinion in *Boyea* (see below), brackets in *Walshire*); *State v. Rutzinski*, 241 Wis. 2d 729, 623 N.W.2d 516 (2001); *State v. Boyea*, 171 Vt. 401, 765 A.2d 862 (2000) (Court's op. and Skogland, J., concurring).

similar consideration exists in the present case. Officer Hurley needed to act quickly to prevent a possible thief from getting away with the goods. We know in hindsight that appellant was the person who took the bicycles, but Officer Hurley did not know that. If appellant had not taken the bicycles, then Officer Hurley would need to quickly continue the search for the suspect. A stop for the sole purpose of determining whether appellant had bicycles in the bed of his truck would be even less intrusive than a DWI-investigation stop of a reckless driver.[4] If there had been no bicycles, Officer Hurley could have and should have immediately terminated the stop, but there *were* bicycles, and so Officer Hurley had authority to approach the driver's side of the vehicle and investigate further.

It is true that no bicycles had been reported stolen, but it is reasonable to assume that the owners, if any, would not have been aware of any theft since it happened late at night and only seven minutes had elapsed. The caller explained how he came to know that there were bicycles in the bed of the pickup truck: he saw a man put them there. This explanation contrasts favorably with the situation encountered by the United States Supreme Court in *Florida v. J.L.*, where an anonymous informant told the police that a black male at a bus stop possessed a gun, but no gun was visible and the informant had not explained how he knew the black male had a gun.[5] And while Officer Hurley said he would have stopped any dark-colored Ford pickup truck and would have stopped it even if it were being driven by a woman, his subjective intentions are not relevant to the reasonable-

---

[4] *See Sidney v. Commonwealth*, 280 Va. 517, 524-25, 702 S.E.2d 124, 129 (2010) (where anonymous informant claimed that vehicle was being driven by person with outstanding warrants, traffic stop to ascertain driver's identity was permissible).

[5] 529 U.S. at 271 (Court's op.) ("All the police had to go on in this case was the bare report of an unknown, unaccountable informant who neither explained how he knew about the gun nor supplied any basis for believing he had inside information about J. L.").

suspicion inquiry, which is solely an objective determination.[6]

I would affirm the judgments of the courts below.  I respectfully dissent.

Filed: June 29, 2011
Publish

---

[6] *See Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001).