# COURT OF APPEALS
# DECISION
# DATED AND FILED

## November 7, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP791-CR**

Cir. Ct. No. **2023CT86**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

---

STATE OF WISCONSIN,

    PLAINTIFF-APPELLANT,

V.

JOSEPH MARTIN BLANKENSHIP,

    DEFENDANT-RESPONDENT.

---

APPEAL from an order of the circuit court for Grant County: CRAIG R. DAY, Judge. *Affirmed.*

¶1 KLOPPENBURG, P.J.[1] The State of Wisconsin appeals the circuit court's order granting Joseph Martin Blankenship's motion to suppress evidence

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(c) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

arising from an investigatory stop. The court determined that the arresting officer lacked reasonable suspicion to administer field sobriety tests and, on that basis, granted Blankenship's motion to suppress the evidence obtained after Blankenship was directed to step out of his vehicle to perform field sobriety tests. The State argues that the court erroneously granted the motion to suppress because the totality of the circumstances gave rise to reasonable suspicion that Blankenship was operating under the influence of an intoxicant or operating with a prohibited alcohol concentration.

¶2     Like the circuit court, I assume without deciding that the officer had reasonable suspicion to stop Blankenship's vehicle to investigate whether he was operating under the influence of an intoxicant or with a prohibited alcohol concentration. Also like the circuit court, for the reasons set forth below, I conclude that, after the officer had completed his questioning of Blankenship, the facts and reasonable inferences from those facts did not give rise to reasonable suspicion that Blankenship was operating under the influence of an intoxicant or operating with a prohibited alcohol concentration, so as to support the administration of field sobriety tests. Accordingly, I affirm.

## BACKGROUND

¶3     The State charged Blankenship with third-offense operating a motor vehicle while under the influence and third-offense operating with a prohibited alcohol concentration, based on evidence obtained after the arresting officer directed Blankenship to step out of his vehicle to perform field sobriety tests following an initially consensual interaction. Blankenship filed a suppression motion challenging the lawfulness of the arresting officer's administration of field

sobriety tests. Blankenship sought suppression of all evidence obtained after Blankenship was directed to step out of his vehicle to perform field sobriety tests.

¶4 The circuit court held a hearing on Blankenship's motion to suppress, at which the State offered the testimony of the arresting officer, Max Hougan, and a body camera video of the interaction. The following undisputed facts are taken from the officer's testimony and video.

¶5 At approximately 11:30 p.m. on July 31, 2023, Hougan received a report from dispatch that a "potential drunk driver" in a blue Ford Escape was heading toward Wisconsin Avenue in the Village of Muscoda. The person who called dispatch ("the caller") said that the caller was "trying to get the keys" from the driver. Hougan saw a blue Ford Escape turn on Wisconsin Avenue and followed the vehicle in his marked squad car to observe its driving. There were no other vehicles on the road. Hougan did not observe any bad driving or traffic violations by the Escape. Shortly after Hougan initially observed and began following the Escape, the Escape pulled over legally and came to a stop, despite the fact that Hougan had not activated his emergency lights or siren and had not initiated a traffic stop. Hougan pulled over behind the Escape and approached the vehicle "to make contact with the driver to see what was going on."

¶6 As Hougan approached the vehicle, the driver, identified as Blankenship, handed his identification out of the window without prompting by Hougan. Hougan did not observe an odor of intoxicants and noted that Blankenship did not have bloodshot or glossy eyes or have any difficulty handling his identification. Hougan asked Blankenship if he was involved in the incident that dispatch described. Blankenship confirmed that he was involved and described the incident as follows. Several people made false accusations that

3

Blankenship hit a child with his vehicle a few weeks earlier. The same individuals who accused him of hitting the child then took and threw Blankenship's keys on the hood of his car. After this incident, Blankenship "grabbed his keys and left."

¶7 Hougan noticed that Blankenship "had slurred speech" and asked him if he had been drinking that evening. Blankenship responded that he "might have had two or three beers earlier today, but that was like three or four hours ago." At this point, Hougan directed Blankenship to step out of his vehicle to perform field sobriety tests. Blankenship did as Hougan directed.

¶8 Based on the testimony and video, the circuit court made factual findings that included the following: (1) Blankenship's speech was "not substantially slurred," and Blankenship's demeanor "was not drunk demeanor"; and (2) Blankenship explained the key-throwing incident reported to dispatch as "essentially people picking on" Blankenship, which "reduced the reliability of the initial report."

¶9 The circuit court concluded that Hougan did not have reasonable suspicion, at the time he directed Blankenship to step out of his vehicle, to support an investigatory stop to administer field sobriety tests. Accordingly, the court granted Blankenship's motion to suppress the evidence obtained after Hougan directed Blankenship to step out of his vehicle to perform field sobriety tests.

¶10 The State appeals.

## DISCUSSION

¶11 The parties dispute whether Hougan had reasonable suspicion that Blankenship was operating a vehicle while intoxicated or with a prohibited alcohol concentration at the time that Hougan directed Blankenship to step out of his

vehicle to perform field sobriety tests.[2]  The State argues that all of the facts and circumstances, taken together, gave rise to reasonable suspicion that Blankenship was operating a motor vehicle while intoxicated so as to justify an investigatory stop for field sobriety testing.  As I explain below, I conclude that the investigatory stop to administer field sobriety tests was not supported by reasonable suspicion, and, therefore, the circuit court properly granted Blankenship's suppression motion.

¶12    I first state the standard of review, next summarize applicable legal principles, then apply those principles to the facts from the suppression hearing and explain my conclusion, and finally address and reject the State's arguments to the contrary.

### I.  Standard of Review

¶13    This court analyzes the grant or denial of a suppression motion under a two-part standard of review.  *State v. Scull*, 2015 WI 22, ¶16, 361 Wis. 2d 288, 862 N.W.2d 562.  First, we uphold the circuit court's findings of fact unless they are clearly erroneous.  *Id.*  A finding of fact is clearly erroneous when "'it is against the great weight and clear preponderance of the evidence.'"  *Phelps v. Physicians Ins. Co. of Wis.*, 2009 WI 74, ¶39, 319 Wis. 2d 1, 768 N.W.2d 615

---

[2] The parties' briefs do not comply with WIS. STAT. RULE 809.19(8)(bm), which addresses the pagination of appellate briefs.  See RULE 809.19(8)(bm) (providing that, when paginating briefs, parties should use "Arabic numerals with sequential numbering starting at '1' on the cover").  This rule has recently been amended, see S. CT. ORDER 20-07, 2021 WI 37, 397 Wis. 2d xiii (eff. July 1, 2021), and the reason for the amendment is that briefs are now electronically filed in PDF format, and are electronically stamped with page numbers when they are accepted for efiling.  As our supreme court explained when it amended the rule, the new pagination requirements ensure that the numbers on each page of a brief "will match ... the page header applied by the efiling system, avoiding the confusion of having two different page numbers" on every page of a brief. S. CT. ORDER 20-07 cmt. at xl.

5

(quoted source omitted). Second, we independently review whether those facts warrant suppression. *Scull*, 361 Wis. 2d 288, ¶16. Put differently, we review de novo the ultimate question of "whether the facts as found by the [circuit] court meet the constitutional standard." *State v. Hindsley*, 2000 WI App 130, ¶22, 237 Wis. 2d 358, 614 N.W.2d 48.

## II. Applicable Legal Principles

¶14 The Fourth Amendment of the United States Constitution and Article I, Section 11 of the Wisconsin Constitution offer protection against unreasonable searches and seizures.[3] When analyzing a claim that a person was seized in violation of the United States and Wisconsin Constitutions, we first "determine when [the seizure] began and whether it was constitutionally permissible at its inception." *State v. VanBeek*, 2021 WI 51, ¶25, 397 Wis. 2d 311, 960 N.W.2d 32. If we conclude that it was, we then "determine whether the officer's continued actions were 'reasonably related in scope to the circumstances which justified the interference in the first place.'" *Id.* (quoted source omitted) (citing *Terry v. Ohio*, 392 U.S. 1, 20 (1968)).

¶15 To be constitutionally permissible, a direction that a suspect perform field sobriety testing must be supported by reasonable suspicion; that is, it must be "based on more than an officer's 'inchoate and unparticularized suspicion or hunch.'" *State v. Post*, 2007 WI 60, ¶10, 301 Wis. 2d 1, 733 N.W.2d 634 (quoting

---

[3] The Fourth Amendment of the United States Constitution states, "The right of the people to be secure in their persons … against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause …." Article I, Section 11 of the Wisconsin Constitution provides, "The right of the people to be secure in their persons ... against unreasonable searches and seizures shall not be violated; and no warrant shall issue but upon probable cause …."

*Terry*, 392 U.S. at 27); *State v. Colstad*, 2003 WI App 25, ¶19, 260 Wis. 2d 406, 659 N.W.2d 394. The officer "'must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant' the intrusion of the stop." *Post*, 301 Wis. 2d 1, ¶10 (quoting *Terry*, 392 U.S. at 21). "Reasonable suspicion depends on the totality of the circumstances[,] … [with] the whole picture viewed together." *State v. Nimmer*, 2022 WI 47, ¶24, 402 Wis. 2d 416, 975 N.W.2d 598 (citations and internal quotation marks omitted).

¶16    "The question of what constitutes reasonableness is a common sense test." *State v. Waldner*, 206 Wis. 2d 51, 56, 556 N.W.2d 681 (1996). "The crucial question is whether the facts of the case would warrant a reasonable police officer, in light of [the officer's] training and experience, to suspect that the individual has committed, was committing, or is about to commit a crime." *Post*, 301 Wis. 2d 1, ¶13. Behavior that may have an innocent explanation can still give rise to reasonable suspicion. *State v. Hogan*, 2015 WI 76, ¶36, 364 Wis. 2d 167, 868 N.W.2d 124. An officer is not required to rule out innocent explanations before initiating the stop. *State v. Anderson*, 155 Wis. 2d 77, 84, 454 N.W.2d 763 (1990).

### *III. Analysis*

¶17    As stated, the circuit court concluded that Hougan would have been justified in stopping Blankenship's vehicle based on the dispatch report, in other words, that Hougan had reasonable suspicion at the time he saw Blankenship's vehicle at the place the caller said the vehicle being driven by a potential drunk driver was going. I assume without deciding that this is correct. However, the question in this case is not whether Hougan had reasonable suspicion at the

moment Blankenship stopped his car, but whether Hougan had reasonable suspicion of impairment at the moment he directed Blankenship to step out of his vehicle to perform field sobriety tests. *See, e.g.*, *County of Sauk v. Leon*, No. 2010AP1593, unpublished slip op. ¶13 (WI App Nov. 24, 2010) ("A request that a driver perform field sobriety tests constitutes a greater invasion of liberty than an initial police stop or encounter, and must be separately justified by specific, articulable facts showing a reasonable basis for the request." (quoting *Colstad*, 260 Wis. 2d 406, ¶19)); *Town of Freedom v. Fellinger*, No. 2013AP614, unpublished slip op. ¶¶16, 22-23 (WI App Aug. 6, 2013) (concluding that "an officer may not conduct field sobriety tests merely because the officer's traffic stop was supported by reasonable suspicion," and considering the moment that the officer asked the suspect to leave the suspect's vehicle to perform field sobriety tests); *State v. Gill*, No. 2022AP654-CR, unpublished slip op. ¶28 n.7 (WI App Apr. 6, 2023) (reasonable suspicion for field sobriety testing assessed as of moment officer asks suspect to perform such testing); *Village of Little Chute v. Rosin*, No. 2013AP2536, unpublished slip op. ¶17 (WI App Feb. 25, 2014) ("an officer must have reasonable suspicion that the driver is impaired before requesting field sobriety tests").[4]

¶18 For the purposes of reasonable suspicion, then, I consider all the facts Hougan had available to him at the moment he directed Blankenship to step out of his vehicle to perform field sobriety tests. *See Gill*, No. 2022AP654-CR, ¶28 n.7 (reasonable suspicion for field sobriety testing assessed as of moment officer asks suspect to perform such testing); *See also State v. Adell*, 2021 WI App

---

[4] *See* WIS. STAT. RULE 809.23(3)(b) (permitting the citation of authored unpublished opinions issued after July 1, 2009, for their persuasive value).

8

72, ¶18, 399 Wis. 2d 399, 966 N.W.2d 115 (quoting *Hogan*, 364 Wis. 2d 167, ¶37) (the direction to perform field sobriety testing here is legally permissible if, at the moment the direction was made, there existed "'factors which, in the aggregate, amount to reasonable suspicion that [the defendant] committed a crime the investigation of which would be furthered by the defendant's performance of field sobriety tests.'") *cf. State v. Smith*, 2018 WI 2, ¶¶32, 37, 379 Wis. 2d 86, 905 N.W.2d 353 (reasonable suspicion existing at one point during a police encounter may dissipate based on subsequent events). For the following reasons, I conclude that the officer here did not have a sufficient basis to direct Blankenship to perform field sobriety tests because the totality of the factors present at the time Hougan directed Blankenship to step out of the vehicle to perform field sobriety tests would not warrant a reasonable officer to suspect that Blankenship "ha[d] committed, was committing, or [was] about to commit a crime." *See Post*, 301 Wis. 2d 1, ¶13.

¶19 I now set forth the factors present in this case and evaluate whether those factors established reasonable suspicion that Blankenship was impaired.

¶20 One factor is that Hougan did not witness any erratic or otherwise dangerous or illegal driving by Blankenship, nor was any such driving reported by the caller. *Cf. State v. Babbitt*, 188 Wis. 2d 349, 357, 525 N.W.2d 102 (Ct. App. 1994) (report of erratic driving coupled with officer witnessing erratic driving supports finding of probable cause); *Post*, 301 Wis. 2d 1, ¶37 (vehicle weaving within lane and driving partially in parking lane supports finding of reasonable suspicion). While the existence of bad driving is neither determinative nor required, "[w]hen an officer is not aware of bad driving, then other factors suggesting impairment must be more substantial." *Leon*, No. 2010AP1593, ¶20.

¶21    A second factor is that Hougan did not smell an odor of intoxicants, see that Blankenship had bloodshot or glossy eyes, or witness Blankenship exhibit problems handling his identification. *Cf. State v. Kennedy*, 2014 WI 132, ¶22, 359 Wis. 2d 454, 856 N.W.2d 834 (bloodshot eyes and odor of intoxicants support finding of probable cause); *Leon*, No. 2010AP1593, ¶26 (individual "produc[ing] his identification readily, without fumbling or confusion" weighs against finding of reasonable suspicion).

¶22    A third factor is that the circuit court found that Blankenship's speech was "not substantially slurred" and that Blankenship did not exhibit "drunk demeanor." *Cf. Kennedy*, 359 Wis. 2d 454, ¶22 (slurred speech supports finding of probable cause). On appeal, the State does not challenge the court's factual findings as being clearly erroneous. *See State v. Walli*, 2011 WI App 86, ¶17, 334 Wis. 2d 402, 799 N.W.2d 898 ("[W]hen evidence in the record consists of disputed testimony and a video recording, we will apply the clearly erroneous standard of review when we are reviewing the trial court's findings of fact based on that recording."). Rather, the State simply recites the evidence that might have supported a contrary finding, including Hougan's testimony that Blankenship "had slurred speech." However, "'[i]t is the function of the trier of fact, and not of an appellate court, to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *State v. Poellinger*, 153 Wis. 2d 493, 506, 451 N.W.2d 752 (1990). The court viewed the body camera video, listened to Hougan's testimony, and drew a reasonable inference from the evidence that the State fails to show was clearly erroneous. "Although evidence may have presented competing factual inferences, the circuit court's findings are to be sustained if they do not go 'against the great weight and clear preponderance of the evidence.'" *Phelps*, 319 Wis. 2d 1, ¶39 (quoted source

omitted). Accordingly, I defer to the court's finding that Blankenship's speech was not substantially slurred and that he did not exhibit a drunk demeanor.[5]

¶23 A fourth factor is Blankenship's admission to drinking earlier in the night. *See County of Jefferson v. Renz*, 231 Wis. 2d 293, 316, 603 N.W.2d 541 (1999) (admission to drinking three beers earlier supports finding of probable cause). Although an admission to drinking weighs in favor of finding reasonable suspicion, Blankenship told Hougan a fairly specific time and number of beverages consumed that Hougan did not testify would, in his experience, support an inference of impairment, and that cuts slightly against an inference of impairment.[6] *See Leon*, No. 2010AP1593, ¶21 (officer being presented with specific number of drinks that would not support an inference of impairment and not "a suspiciously vague admission of 'some' drinking or 'a few' drinks" was relevant to finding a lack of reasonable suspicion); *see also Post*, 301 Wis. 2d, ¶13 ("The crucial question is whether the facts of the case would warrant a reasonable police officer, in light of his or her training and experience, to suspect that the individual has committed, was committing, or is about to commit a crime.").

¶24 A fifth factor is that a caller reported Blankenship's vehicle as being operated by a "potential drunk driver." *See State v. Williams*, 2001 WI 21, ¶36,

---

[5] Blankenship suggests that Blankenship's slurred speech was a result of a cognitive or speech disability. However, there is no indication that Hougan knew Blankenship or became aware of a speaking or cognitive disability during the stop. *See Nimmer*, 402 Wis. 2d 416, ¶26 (reasonable suspicion is supported by everything observed by and known to the officer). Since this fact was not known to Hougan, a reasonable officer in his position would not have considered it, and we agree with the circuit court that it does not factor into the reasonable suspicion analysis here.

[6] At the time of the incident, Hougan was employed by the Village of Muscoda Police Department and had approximately eleven months of experience in that capacity and just under two years of total experience in law enforcement.

241 Wis. 2d 631, 623 N.W.2d 106 (reasonable suspicion can be based on an informant's tip, provided the tip is sufficiently reliable). "In assessing the reliability of a tip, due weight must be given to: (1) the informant's veracity; and (2) the informant's basis of knowledge." *State v. Rutzinski*, 2001 WI 22, ¶18, 241 Wis. 2d 729, 623 N.W.2d 516. A deficiency in one of the factors can be compensated for by sufficiency of the other. *Id.* It follows that in "cases where the police receive a tip from an unidentifiable informant, the tip nonetheless may be deemed reliable if it contains 'inside information' or a similar verifiable explanation of how the informant came to know of the information in the tip, which the police in turn independently corroborate." *Id.*, ¶25. The circuit court concluded that it was unnecessary "to ascertain whether this was or was not an anonymous tip," and found that the caller was "very identifiable." *See id.*, ¶32 (informant exposing the informant to being identified weighs in favor of finding a tip reliable). However, although the caller was able to describe the vehicle and route that Blankenship was driving, the record does not reflect that the caller provided any basis for the caller's knowledge that Blankenship was "potentially drunk." The caller did not state that the caller saw Blankenship drinking, driving erratically, or exhibiting otherwise intoxicated behavior. There were no "strong indicia of an informant's basis of knowledge" as the caller provided only a conclusory allegation that there was a "potential drunk driver." *See id.*, ¶25 (tip "may be deemed reliable if it contains 'inside information' or a similar verifiable explanation of how the informant came to know of the information in the tip").

¶25 In addition, the circuit court found that Blankenship's explanation that the key throwing incident was "essentially people picking on" Blankenship "reduced the reliability of the initial report." The State does not challenge this finding as clearly erroneous, and as described above, I defer to the court's factual

finding. *See* **Phelps**, 319 Wis. 2d 1, ¶39 ("circuit court's findings are to be sustained if they do not go 'against the great weight and clear preponderance of the evidence'" (quoted source omitted)). Given the circumstances described above, the tip weighs only slightly in favor of finding reasonable suspicion. On the one hand, the tip provided a reasonably precise location and description of Blankenship's vehicle, and the caller was "identifiable." Further, the tip alleged that there was a "potential drunk driver," and Blankenship did admit to Hougan that he drank earlier in the night. On the other hand, the tip did not provide any basis for the caller's knowledge that Blankenship was intoxicated, and the tip was made under what the court found was the circumstance of "people picking on" Blankenship. Accordingly, although this factor does not weigh strongly in favor of finding reasonable suspicion, I cannot say that it counts for nothing.

¶26 A sixth and final factor is that the stop occurred around 11:30 p.m. *See* **Post**, 301 Wis. 2d 1, ¶37 (incident taking place at night supports finding of reasonable suspicion); **State v. Lange**, 2009 WI 49, ¶32, 317 Wis. 2d 383, 766 N.W.2d 551 (driving at bar time on the weekend supports finding of reasonable suspicion). As the circuit court stated, "That's not a classic witching hour. It's not one or two o'clock in the morning, nor is it six o'clock in the evening." Given that this is neither the middle of the day nor bar time, this factor does not weigh strongly in either direction.

¶27 The above factors, viewed in the aggregate, do not establish reasonable suspicion, at the time that Hougan directed Blankenship to perform field sobriety tests, that Blankenship was driving while intoxicated or with a prohibited alcohol concentration. *See* **Nimmer**, 402 Wis. 2d 416, ¶24 ("Reasonable suspicion depends on the totality of the circumstances[,] … [with] the whole picture viewed together."). To repeat, the totality of the circumstances

13

available to Hougan were the following: dispatch received a tip of a "potential drunk driver" with no description of the basis for the caller's knowledge; Hougan observed the vehicle dispatch described but did not witness any bad or illegal driving; the vehicle legally pulled over without Hougan initiating a traffic stop; once Hougan approached the vehicle, Blankenship did not have trouble handling his identification, did not smell of intoxicants, did not have bloodshot or glossy eyes, did not substantially slur his speech in a manner that suggests intoxication, and did not exhibit a drunken demeanor; when asked, Blankenship told Hougan that he "might have had two or three beers earlier today, but that was like three or four hours ago"; and the tip may have been made in the context of people "picking on" Blankenship. While the initial tip provided Hougan with a possibility that Blankenship was a "potential drunk driver," the facts as they unfolded did not corroborate the tip, nor did they independently suggest that Blankenship was impaired. *See* WIS. STAT. § 346.63(1)(a) (does not prohibit operating a motor vehicle after having consumed alcohol, but instead prohibits driving "[u]nder the influence of an intoxicant ... to a degree which renders [one] incapable of safely driving"); § 346.63(1)(b) (prohibits driving with a prohibited alcohol concentration). Simply put, the tip alone was not sufficiently reliable to support reasonable suspicion without Hougan observing additional factors to support the inference that Blankenship was either operating with a prohibited alcohol concentration or intoxicated to a degree that rendered him incapable of safely driving. As summarized above, no such additional factors were present here that could provide Hougan with the necessary particularized suspicion that Blankenship was impaired at the time Hougan directed him to perform field sobriety tests.

¶28 The State argues, in part, that the facts that a caller reported a "drunk driver" in a blue Ford Escape, that Hougan saw that vehicle, and that there was no other traffic on the road weigh in favor of reasonable suspicion. While those facts may have sufficed to support reasonable suspicion to stop the vehicle to investigate further, they did not, as explained above, support reasonable suspicion to administer field sobriety tests based on what Hougan knew at the time that he directed Blankenship to perform field sobriety tests. Reasonable suspicion requires that an officer have a particularized suspicion that a crime was, is, or is going to be committed. *State v. Young*, 2006 WI 98, ¶20, 294 Wis. 2d 1, 717 N.W.2d 729. The crime here, driving while intoxicated or with a prohibited alcohol concentration, requires a particularized suspicion that Blankenship was, in fact, intoxicated to a degree that rendered him unable to drive safely or above the legal limit. *See State v. Dotson*, No. 2019AP1082-CR, unpublished slip op. ¶15 (WI App Nov. 24, 2020) (administering field sobriety tests requires reasonable suspicion that a person "had consumed enough alcohol to impair [their] ability to drive," not just that the person "had been consuming alcohol"); *see also* WIS. STAT. §346.63(1)(a)-(b).

¶29 The State also argues that the fact that Blankenship pulled over without Hougan initiating a traffic stop weighs in favor of reasonable suspicion. However, the State does not develop an argument, supported by legal authority, that a vehicle pulling over legally without being prompted by a traffic stop supports reasonable suspicion that Blankenship was impaired.

¶30 In sum, based on the totality of the circumstances, the facts and reasonable inferences from those facts did not establish reasonable suspicion that Blankenship was driving while intoxicated or with a prohibited alcohol concentration.

## CONCLUSION

¶31 For the reasons set forth above, I affirm the circuit court's order granting Blankenship's motion to suppress evidence obtained after Blankenship was directed to step out of his vehicle.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.